The first case on the call of the docket is Agenda No. 1, Case No. 131191, People v. Benson. Is the appellant prepared to proceed with her argument? Please proceed, Ms. Cook. Good morning, Your Honors. Good morning, Counsel. May it please the Court. My name is Elizabeth Cook, and I'm from the Office of the State Appellate Defender on behalf of Mr. James Benson. Your Honors, I am here today to ask this Court to apply the two-step Second Amendment historical analysis announced by the U.S. Supreme Court in Bruin to Section 24.1.1a of the unlawful possession of a weapon by a felon statute and find that it is unconstitutional as applied to Mr. Benson. The first step of the Bruin test requires the Court to determine whether the conduct being regulated falls under the protection of the Second Amendment. If the conduct does trigger the Second Amendment, then this step places the burden on the State to point to a well-established historical analog that is comparably justified and relevantly similar. Here, Benson was convicted under a statute that completely prohibits any firearm possession by a person with a past felony conviction, no matter how nonviolent or distant in time. This statute, as applied to Benson, does not survive the Bruin test, and this Court should find it unconstitutional as applied to him and reverse his conviction for UPWI. Counsel? I'm sorry. Go ahead. Your mother's here. You can go ahead. Okay. Thank you, Justice O'Dwight. The fact that your client was also convicted of reckless discharge of a firearm and domestic battery, does that come into play, a factor we should consider since this is an as-applied challenge? Your Honor, those other convictions are not relevant to this case. The only conviction we ask that this Court to look at is the UPWF conviction. That offense was completed the moment that he picked up a firearm. The other convictions, the reckless discharge and the misdemeanor domestic battery, would not be affected by this Court's decision in this case. Counsel? Let me ask you, so let's step back a little bit. As was mentioned by Justice Overstreet, this is an as-applied challenge, as opposed to a facial challenge, where facial, we're talking everyone. There are no circumstances under which the statute can be determined to be constitutional. But as applied, we're talking about the specific individual and the unique facts related to their claim. And so in this instance, is it premature at this point to even make that determination? Do we need to have the circuit court have a hearing and look at the specific and individual facts related to your client? Your Honor, we raised this issue on direct appeal, and the appellate court concluded that the claim was legal in nature, meaning that there was no additional fact-finding necessary and that it was just a question of law that the appellate court could decide. And we would argue that this Court has all of the facts necessary to determine the outcome of this as-applied challenge. Is the certified copy of his 2015 aggravated unlawful use of weapon conviction actually in the record? I believe so, Your Honor. Where is that? I'm sorry, Your Honor, I don't have the record site in front of me. Okay. But if this Court determines that additional fact-finding is necessary, certainly it's within this Court's power to order a remand for that fact-finding, similar to what Justice Overstreet suggested in this Court's decision in Thompson, that additional fact-finding may be appropriate in the broad context. And with that additional fact-finding, would that be an opportunity for the circuit court to look at his past history, as was previously mentioned, as far as whether or not he has any prior offenses that involve violence? The past history that the Court could determine is this unlawful use of a weapon by a felon in conduct, which we know was an offense that was charged on the basis of his lack of a FOIA card. So, again, that was just a simple firearm possession with the absence of a FOIA card. It's not characterized by any violent conduct. And what about any violent conduct associated with his arrest this time around? Your Honor, that is not relevant to the UPWF charge in this case. If I could offer an analogy, you know, let's say that somebody is charged with a robbery and an attempted murder, and the State has proven the elements of the robbery but not the specific intent to commit murder. The fact that the State has proven one offense does not make it more likely that he's committed the other offense. The State has to prove every element of each charged offense. Yeah, but the State proved it in this case, right? There were two other convictions. Correct. But we argue that the UPWF statute is unconstitutional under the framework of Hemsden Bruin. Benson is an American, so he is one of the people covered by the Second Amendment. Interpreting the people to exclude people convicted of felony offenses would require this phrase to have different meanings throughout the Constitution. Such a distinction would defy Heller, which recognized that in all six other provisions of the Constitution that mention the people, the term unambiguously refers to all members of the political community, not an unspecified subset. Benson was convicted of violating Illinois' UPWF statute based on his simple possession of a firearm inside his home, which is conduct protected by the Second Amendment. This case, therefore, satisfies the first Bruin step. The second Bruin step requires the State to prove that the challenged law shares a historical analog that is relevantly similar in both the why and how it restricts firearm possession. Counsel, what did the United States Supreme Court say about felons in Donald when discussing Heller? Didn't it pretty much say that it's safe to assume that if someone is a felon that they cannot possess weapons? Your Honor, the U.S. Supreme Court has never considered a felon in possession case. That language that appeared in Heller was dicta. Heller, McDonald, and Bruin all discussed regulatory regimes, and the specific criminal histories of the petitioners in those cases were not in front of the court. So this issue remains unresolved by the U.S. Supreme Court. But what about the language in McDonald? We made it clear in Heller that our holding did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons and the mentally ill. Correct. But under the framework announced in Bruin and Rahimi, the burden is on the State to point to a historical analog that is similar in the same purpose and the same manner that it regulates firearm possession. But do you get to that point if the person is determined not to be the people as we understand it? Well, Your Honor, the most closely analogous case is Rahimi, which was not a felon in possession case, but was similar in that Rahimi himself was charged with a number of violent offenses, violating the order of protection and shooting a gun in a public place. And in that case, the Supreme Court first determined that he was a member of the people with Second Amendment constitutional rights and then went on to conduct the text and history analysis. So the court did reach the second step of Bruin, even in that case. Counsel, do you think the U.S. Supreme Court has heard arguments in U.S. v. Himani? Do you think that may be instructive to the court? Your Honor, Himani dealt with the situation of a person who is an unlawful user or addicted to a controlled substance. So it's not directly relevant. However, the court's reasoning in that case certainly would be instructive in a case such as this. And I believe the court's questions in Himani indicate that the court still considers the clear threat of physical violence to be the only justification for a firearm regulation. But doesn't the court also say that the Second Amendment applies to law-abiding citizens? And since he's been convicted of felony, he's not law-abiding. The court did use that phrase, Your Honor. However, the court also clarified in Bruin that the meaning of that phrase was never clearly defined and that it was not meant to limit the number of people who have Second Amendment rights. It was merely to say that those people who are law-abiding definitely do have Second Amendment rights. But, in fact, as we can see from the example set in Rahimi, the court considers all American citizens to have Second Amendment rights and then will conduct the historical analysis to determine whether the regulation at issue is based in history and justified by the policies that would have motivated people at the time of the founding. Counsel, in Heller, the Supreme Court said, nothing in our opinion should be taken to cast doubt on long-standing prohibitions on the possession of firearms by felons, which is presumptively lawful. What does that language mean? Well, Your Honor, the court made clear in Rahimi that it does still expect the courts to conduct a text and history analysis, even in a case where the person has committed a violation of the law. And we can see that from the facts of Rahimi itself. And those cases came after Heller? Correct. Yes, Your Honor. Ms. Cook, your argument is that your client was convicted of a nonviolent offense. He wasn't registered to own a firearm. But the State points to a number of statutes on the books at the founding that penalize nonviolent offenses with death. And so isn't that persuasive as to prohibiting felons from possessing firearms? Well, Your Honor, capital punishment is not a firearm regulation. What Bruin and Rahimi say is that this court should look to firearm regulations for the why and how as part of the text and history analysis. So, you know, the idea that you can punish horse theft with death or horse theft is not the same as simply possessing a firearm, which is the act that is relevant here. There is also a conflicting history about whether felons were punished with death. I think the historical evidence suggests that by the time of the founding, the states were moving away from punishing most felonies with death. And in fact, most felons lived to serve out their, you know, sentences and then returned to civil society. And at that point, they actually had their firearms restored. So that would be the more relevant historical analog for this case. It wasn't in the historical analysis, isn't there a consideration made in colonial America about an individual's likelihood to obey the law and that they would disarm, pretty commonplace to disarm individuals who they felt couldn't be trusted to obey the law? And wouldn't a felony conviction be indicative of that, regardless of whether it was violent or nonviolent? Well, Your Honor, the analogy that counsel has raised is, for example, to the Loyalist laws at the time of the founding. And in that situation, although people were temporarily disarmed, it was on the basis of this idea that they posed a threat of a collective uprising against the new government. But once people took a Loyalist law to the new U.S. government, they were allowed to have their firearm rights restored. So those regulations were temporary in time, and they were also motivated by a different policy concern, which was to protect the U.S. government from a collective uprising. Today, we're not concerned that felons as a group are going to rise up collectively against the government. And in addition, I don't think that analogizing to these marginalized groups at the time of the founding, analogizing them to felons, necessarily makes sense. I mean, we wouldn't say that Catholics at the time of the founding are just like felons today. At the time of the founding, there were a group of people who were felons, and those are the people that we should look to for the historical analogy. But can't Mr. Benson, you said, you know, the rights were only temporarily taken away then. But can't Mr. Benson petition to have his FOID card restored, his privileges restored? Your Honor, there is a provision in the FOID card act that provides for discretionary felon reinstatement. However, this application process is highly discretionary, as this court observed in Evans, that it is completely within the discretion of the reviewing board, and they have to present evidence of their character and reputation to the satisfaction of the board, which then may restore their firearm rights. In this situation, we would analogize this felon reinstatement provision to the type of May issue regime that the Supreme Court struck down in Bruin with respect to felons. Is that something that also perhaps makes this request premature? Should he have to demonstrate that he has even asked to get his FOID card back? No, Your Honor, I would argue no, because the UPWF offense in this case was completed the moment that he picked up the firearm. This felon reinstatement provision provides a possible exception from prosecution, but the absence of a FOID card is not actually an element of the UPWF offense. So simply the fact of him having this prior conviction and then going on to possess a firearm was enough to warrant a conviction for UPWF, as pled to him. No relevantly similar historical law has restricted firearm possession based on a person's felon status the way UPWF does, nor has the Supreme Court recognized such a tradition. Gun violence is a problem that has persisted since the 18th century, yet the founding generation had no laws limiting gun possession by people convicted of crimes. And the felony category at the founding was narrower then than now. Past crimes once classified as misdemeanors or nonexistent back then are felonies today. And possessing a firearm as a felon was not considered a federal crime until 1938 at the earliest. A historical legislative right to classify an offense as a felony does not speak to whether there is a historical tradition of firearm regulation, much less one that bans possession of firearms based on a person's prior felony conviction, which is the issue before this court. This court should therefore find that under the unique facts of this case, the UPWF statute's permanent prohibition on Benson's firearm possession with criminal penalties for violations based on a prior conviction for nonviolent conduct is incompatible with our nation's historical tradition and thus violated the Second Amendment as applied to him. Ms. Cook, you mentioned the May issue licensing regime that Bruin struck down, but it did preserve the shall issue licensing regime. And those regimes require background checks to ensure licenses are not issued to felons. Isn't the necessary implication that it's constitutional to deny firearm licenses to those who have been convicted of felonies? Well, Your Honor, just the fact that the legislature has written the law that way doesn't necessarily make it constitutional. We're not challenging the shall issue regime described by the Foyt Card Act and which this court has upheld in Thompson. To the extent that we are challenging any aspect of the Foyt Card Act, it would only be this felon reinstatement provision, which we would argue constitutes a May issue regime with respect to felons. Instead of responding to Benson's as-applied challenge, the state presents two separate policy-based arguments that an alternative remedy to an as-applied challenge already exists in the Foyt Card Act and that entertaining an as-applied challenge in the Second Amendment context would be unworkable and create endless litigation. Such legislative or policy-based arguments are inappropriate following the decisions of Heller and Bruin, and regardless, the state's concerns are overblown. The legislative scheme outlined in the Foyt Card Act, a presumptive lifetime ban on firearm possession subject to inexact criteria and complete government discretion, has no historical analog. The state's fear that permitting as-applied Second Amendment challenges will mire the courts in endless litigation and produce uncertainty and confusion is overblown. Because our nation's tradition of restricting firearm rights for dangerous people is consistent with prohibiting gun possession by persons with prior convictions involving violent behavior, it would still be constitutional to restrict firearm rights based on prior offenses qualifying as an expansively defined forcible felony, for example. Your Honors, for these reasons, we ask that you find that Section 24.1.1a is unconstitutional as applied to Mr. Benson under the two-step framework announced in Bruin and reverse his conviction for UPWF. Thank you, Your Honors. Thank you very much, Ms. Cook, for your argument. Mr. Fisher? Good morning, Your Honors. Tom Cook. Pleasing Court Assistant Attorney General Carson Fisher for the people. Your Honors, as you noted, this is an as-applied challenge. My friend concedes that the unlawful possession of a weapon by a felon statute is facially constitutional. So the only question before this Court is whether it can be constitutionally applied to this defendant who was previously convicted of illegally carrying a gun in public without a license and who has never availed himself of the statutory mechanism by which he can have his firearm rights restored before, again, illegally possessing a firearm. And the answer to that question, Your Honors, is yes. As Your Honors' questions noted, both Heller and then McDonald explicitly held that prohibitions against felons possessing firearms are constitutional. This Court confirms, relying on those opinions, reached the same conclusion. And that conclusion was actually reinforced in Bruin when the Court reaffirmed the holding of those earlier cases that the Second Amendment protects the rights of law-abiding citizens to possess firearms. And that category, law-abiding citizens, necessarily excludes all felons. And the Court used that phrase, law-abiding citizens, 14 times in Bruin before, again, in Rahimi, reaffirming that it was not calling into question the constitutionality of prohibitions on felons in possession of firearms. Counsel, let me ask you the same question. Is this claim premature? Do we have enough information to make a decision in this matter? Or should it be sent back to the Circuit Court to have a hearing specifically regarding this defendant's background and his history and having a record in determining whether or not he should move forward on this claim? It is not premature, Your Honor, for two reasons. First, Your Honor, it's not premature because the clear precedent of the U.S. Supreme Court is that prohibitions on all felons in possession are constitutional under the Second Amendment. And second, because if some kind of individualized determination of present dangerousness was required such that if defendant was not presently dangerous based on his prior demonstrated propensity for committing felonies, he could have his firearm rights reinstated. The time to do that would have been before he, again, illegally possessed a firearm by taking advantage of the mechanism in the Void Card Act to petition for the restoration of one's firearm rights. Now, my friend says that the mechanism in the Void Card Act itself is unconstitutional under Bruin, but Bruin is actually in apposite to that provision. What Bruin is talking about is the presumption that ordinary law-abiding citizens have a right to possess firearms. And in Footnote 9, it recognized that challenging licensing regimes, including Illinois', are constitutional because they do presumptively allow law-abiding citizens to possess firearms. And this Court, relying on that footnote in Thompson, upheld the Void Card Act through the CCL Act. What the mechanism at issue here does is say once someone has already removed themselves from this category of ordinary law-abiding citizens by committing a felony, we've created a mechanism by which they can ask to have their firearm rights reinstated. Bruin's reasoning about shall-issue versus may-issue licensing regimes for ordinary law-abiding citizens doesn't inform anything about what's constitutionally required for restoring the firearm rights of a convicted felon. So do we get past Step 1 of Bruin? And if we do, what should we be considering? Do we look at the defendant's prior history or the factual circumstances surrounding this incident? So to answer your first question first, Your Honor, no. I think the Court can stop at the first step, at the textual step of the Bruin analysis. And that the word the people, the operative term here is the people as the framers understood it in the context of the Second Amendment. And the Court in Bruin was explicit that that was talking about ordinary law-abiding citizens. And that has to be the case to make sense of the holding in Footnote 9 and the reasoning in Footnote 9 that shall-issue licensing regimes are constitutional precisely because they presume the rights of the people, the ordinary law-abiding citizens, to possess firearms. And only answer this question of whether someone falls into one of these presumptively dangerous categories, such as convicted felons or mentally ill, at which point they can be excluded from possessing firearms. And again, this Court already looked at that footnote and recognized that the Illinois Foy Card Act and the Concealed Carry Act, which function in this exact manner, are constitutional. But if the Court were to move to the second step, to the text and history step, to answer the question whether the unlawful possession of a weapon by a felon statute is constitutional, the answer is the same. Yes, it is. And we know it is because, dating back to colonial times, the penalties far more severe than mere disarmament were imposed on all felons, including nonviolent felons, people convicted of things like counterfeiting and forgery. Now, my friend says that the fact that someone who's been subject to capital punishment obviously can't exercise their Second Amendment rights doesn't actually tell us anything about whether they could have been constitutionally disarmed. But in fact, Rahimi used exactly that reasoning at one point when he said that if colonial-era legislatures were free to use imprisonment to address the problem they were confronting, then they must have been free to use a lesser penalty like disarmament. And that has to be the case to avoid the trap that the Court and Justice Barrett in her concurrence in Rahimi warned against of a law trapped in amber, of requiring 21st century legislatures to solve problems in exactly the same way as their 18th century counterparts. So my second question was, what should we be considering? Do we look at his prior history, the factual circumstances of this incident? So the Court should not because constitutionally, both because statutorily the unlawful possession of a weapon by a felon statute makes it illegal for any convicted felon to possess a firearm, and because constitutionally the disarmament of any felon who courts with the Second Amendment. But it's not clear exactly what analysis my friend is suggesting courts should undertake, whether it would be a statute-based analysis, some sort of categorical approach to ask whether a crime is a crime of violence. And we all know that that creates all kinds of difficulties in the analysis when courts have to take that categorical approach, or whether it is an individualized approach where we look at the facts of a prior conviction. Certainly, as an initial matter, if a defendant is arguing that the facts of their prior conviction demonstrate that they are not presently dangerous, then they should take advantage of the Section 10 of the Foy Card Act to restore their firearm rights before they possess a firearm, not simply engage in self-help and then argue to a court later when they're charged with their new offense that they should be an exception. But moreover, it would be, and the court in oral arguments last week, the US Supreme Court in oral arguments last week, sort of acknowledged the difficulties with having this kind of mini-trial in the context of a new criminal trial of looking back at someone's prior conduct. Perhaps someone pled guilty to an offense a decade or more ago. We know guilty pleas are not only common in our system, but are encouraged by this court as part of our criminal justice system. And now we have to have a mini-trial to determine whether someone's prior felony demonstrates dangerousness or demonstrates violence before we can enforce the unlawful possession of a weapon by a felon statute against them when someone who is a non-law-abiding citizen has chosen to illegally possess a firearm again. So it's not clear to me exactly what the touchstone is that my friend is saying needs to be applied for a constitutional provision. I think the answer is no such analysis needs to take place because disarming any felon comports with the Second Amendment. But to the extent that we can draw sort of a present dangerousness requirement, such a kind of FOIC card act already has created a mechanism by which a circuit court can engage in that kind of fact-based determination. And yes, there would be an opportunity and a requirement at that point for the parties to come forth with evidence to answer that question. That is a privilege that our FOIC card system presents to people who have had their firearm rights withdrawn because they have committed a felony. It is not a constitutional requirement. But this is an as-applied challenge. Yes, it is, Your Honor. So don't we look at the underlying facts surrounding circumstances? So, yes, Your Honor. And I think that if the court were to look beyond the fact that this defendant has committed a felony and that the General Assembly has chosen to create an offense that penalizes any convicted felon who then possesses a firearm, and look at the specific facts of this case to say, does the application of that statute to this defendant comport with the Second Amendment, there are two things that make it especially clear that it is constitutional in this context. First, his prior offense of illegally possessing a weapon in public means that not only does the general historical tradition of imposing penalties far greater than mere disarmament against nonviolent felons become relevant, but so, too, do things like a fray in going armed laws, which specifically address concerns with people who illegally carry weapons in public. So, in fact, his prior offense, while not a violent offense, there's nothing in the Second Amendment standards that have been developed by the court that suggests that a prior history of violence is necessary to disarm someone. In fact, the categories under the shall issue licensing regimes that were approved by the court in footnote 9, this state's FOI card and concealed carry licensing regime, don't require a demonstration of prior violent acts. They require a demonstration that that person has a propensity for violating the law because they are a convicted felon. They're mentally ill, but not necessarily that they've committed acts of violence. So the fact that it's not a violent offense is not relevant here, but it is the kind of offense, specifically the kind of offense, illegally carrying a firearm in public, that has been punished historically through a fray laws and going armed laws. And then the second thing here is that if, to the extent that this defendant is saying, I should have had an opportunity to show that I'm not dangerous, to show that I should have my firearm rights restored despite having committed a felony because I'm not dangerous, he could have taken advantage of the mechanism for restoring his firearm rights and didn't. And so that is another relevant fact to this specific defendant as the statute is applied to him. So in that way, those are relevant facts in terms of the as-applied challenge. But the truth is, Your Honor, that it is an easier case than that in some ways because there is this clear precedent from the U.S. Supreme Court, from Heller, from McDonald, from Bruin, from Rahimi, that statutes that prohibit felons from possessing firearms are constitutional. So the Hamani case was argued in front of the U.S. Supreme Court. Yes, Your Honor. Do you think that may be instructive? It might be instructive in that I think, as in Rahimi, the court may provide further guidance for how courts should address issues that sort of fall around the perimeter of these, of sort of the historical analogs. I mean, Rahimi got lots of opinions from different members of the court helping to sort of explicate, look, we're not looking for a historical twin, we're not looking for a close cousin, we're looking at sort of what was the problem that was being addressed. This guidance, for example, that if imprisonment was a valid way to deal with the problem, then the lesser penalty of disarmament is a valid mechanism for dealing with the problem. So, yes, the decision in Hamani might provide further guidance for the application of these texts. It's not necessary to hold this case, waiting for the opinion in Hamani, because the basis on which a category of people have been found to be dangerous such that they should not be allowed to possess firearms in Hamani is a very different one than the category that exists here. It's marijuana. It's a violation of the federal marijuana statute. Well, it is a violation of the federal marijuana statute, but that's not the basis for his dangerousness here. It's drug use, right? It's not that he was convicted of a felony, so he was a felon in possession of a firearm. It's that he was a drug user. And so the most relevant historical analogs are going to be different, and you don't have this clear pronouncement over and over again from the court saying that prohibitions against drug users possessing firearms are presumptively constitutional the way that in this case we have this clear, repeated pronouncement from the court that prohibitions against felons possessing firearms are presumptively constitutional. I will say, I think that the arguments, for example, before the court in Hamani were interesting and instructive in, for example, the way that the court did express concern about, despite the fact that there's no means-ends analysis in this context, did express concerns about how the kind of test that the defendant in that case was asking for would operate in practice, meaning that that's not something that the court should entirely ignore in this context, though it's clearly tertiary to the question of whether it's constitutional to apply our UPWF statute to this defendant. Relevant? Absolutely. The Supreme Court's reasoning as it applies this test is always going to provide further guidance to this court in how the test should be applied, but I don't think it's necessary to hold for Hamani, although, of course, the court could choose to do so. Mr. Fisher, you pointed out that the Void Card Act allows a felon to seek relief from the court, and so in this case, if he were to be able to show that he's not a violent person, nevertheless, the statute says that the court may grant relief. Does that factor into the Second Amendment analysis? I don't think it does, Your Honor, because his prior felony conviction has removed him from the category of ordinary law-abiding citizens. So Bruin tells us that you have to have a shall-issue licensing regime that presumptively allows law-abiding citizens to obtain a license and carry a firearm for self-defense. It doesn't say anything about there being an objective or presumption that someone who has already removed themselves from that category of law-abiding citizens by committing a prior felony has to have a shall-issue regime in place to restore their firearm rights. I think that once someone has demonstrated their dangerousness by showing a propensity for violating the law, that the state can conduct a subjective analysis of their present dangerousness before restoring the person's firearm rights. In fact, constitutionally, the state could just permanently disarm all felons. Some states do, and as a historical matter, there were laws that did. So in other words, even if the statute didn't allow an applicant to seek relief from the court, your position is that the statute is still constitutional. It would still be constitutional. And the federal felon-in-possession statute doesn't have an operative mechanism for people to restore federal firearm rights. But the majority of appellate courts that have considered that statute have found it to be constitutional, though, of course, the U.S. Supreme Court has now turned down, I think, 28, as is my last count, cert petitions on that particular question. So, Your Honors, this court could approach this question in much the same way it approached the Constitutionality of the Forty-Part Act and the CCL Act in Thompson, simply look to the U.S. Supreme Court precedent, recognize that it has made a clear pronouncement that this kind of provision is constitutional, and uphold our statute just by following that precedent. If the court does conduct its own textual or historical analysis under either step of the Bruin test, it should reach the same conclusion that the unlawful possession of a weapon by a felon statute is constitutional, as applied to this defendant, who had previously been convicted of illegally carrying a firearm in public and who has never attempted to use a statutory mechanism to restore his firearm rights. And unless Your Honors have any further questions, we would ask that this court affirm the judgment of the appellate court. Thank you, Mr. Christian. Ms. Cook. Thank you, Your Honors. Counsel stated that the U.S. Supreme Court has held that prohibitions on all felons are constitutional, and that is not accurate. The U.S. Supreme Court has never considered the question of felon and possession laws, as this court noted in Thompson. The state says that people who are not law-abiding should not have firearm rights, but violating a law is not the same as being a dangerous person. In Illinois, we have a lot of felonies that are not characterized by dangerousness. For example, eavesdropping, driving on a revoked license, transporting hazardous waste without a permit, home repair fraud, these things are all felonies that do not carry any threat of physical violence to another person. And I would suggest that this court look to the Third Circuit's decision in range, where the court considered a prior offender who was convicted of food stamp fraud and sought to have his firearm rights reinstated. And in that case, the court considered that the prior offense was not characterized by any threat of physical violence and that there was no relevant historical analog for that sort of regulation as applied to him. Again, that was an as-applied challenge. Counsel, I'm going to ask you to – Justice Holder-White asked you earlier, why is this not premature? And I can't say that I recall exactly what your answer was. Why is this premature? Because his UPWF conviction – the offense of UPWF was committed the moment that he possessed a firearm with his prior AUW. That was the only – those were the only facts that the state was required to prove to obtain a conviction in that case. I'm sorry, in this case. Your Honors, the Second Amendment protects a core constitutional right, the right to bear arms. This right is a fundamental part of being an American and is no less important than the rights to free speech, freedom of religion, freedom of the press, freedom to assemble peaceably, and freedom from unlawful search and seizure. These basic individual rights form the foundation of the American government and identity. Although such rights may be temporarily abrogated while serving a criminal sentence, these rights are restored upon release. Just as we would agree that a former felon has the right to a jury trial or the right to free speech, so we should presume that every free American is a member of the people and entitled to full constitutional protection, including the right to bear arms. At the time of the founding, people with nonviolent felony backgrounds were able to regain their firearm rights upon completion of their sentences. That principle should hold today. In this case, where Mr. Benson's conviction under the UPWF statute was premised only on his prior conviction for simply possessing a firearm, which is not dangerous conduct, we ask that this court find that the statute is unconstitutional as applied to him and reverse his conviction for UPWF. Thank you, Your Honors. Case number 131191, People v. Benson, is taken under advisement as agenda number one. Ms. Cook, Mr. Fisher, the court thanks you for your arguments.